## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MAXINE DAVIS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Civil Action No.: 2:13-CV-00496-RDP** |
| | } | |
| **CAROLYN W. COLVIN, Acting** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Maxine Davis brings this action pursuant to Title XVI of Section 1631(c)(3) of the Social Security Act, seeking review of the decision by the Administrative Law Judge (ALJ), denying her claims for Supplement Security Income (SSI). *See also,* 42 U.S.C. § 1383(c). Based upon the court's review of the record and the brief submitted by Defendant,[1] the court finds that the decision of the ALJ is due to be affirmed.

### I.   Proceedings Below

Plaintiff filed for SSI on April 13, 2010, alleging that her disability began on November 1, 2009. (Tr. 128). Plaintiff's application was initially denied by the Social Security Administration on August 25, 2010. (Tr. 47). Plaintiff then requested and received a hearing on February 9, 2012 before Administrative Law Judge Edward S. Zanaty. (Tr. 52, 58-69, 72). In his decision, dated February 15, 2012, the ALJ determined that Plaintiff had not been under a disability within the meaning of § 1614 (a)(3)(A) of the Social Security Act since April 13, 2010.

---

[1] On May 7, 2014, in lieu of a written brief, Plaintiff filed new evidence pertaining to osteoarthritis in her knee, back pain, carpal tunnel syndrome in her hand, as well as additional evidence related to her asthma treatment. (Doc. 11).

(Tr. 8-23). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

Plaintiff was forty-one years old at the time of the hearing, and had an eleventh grade education. (Tr. 121, 136, 172). Plaintiff alleges she is unable to work due to bipolar disorder and post-traumatic stress disorder (PTSD). (Tr. 135). Plaintiff further alleges that she has arthritis in her knees and experiences pain at a level of 8 out of 10. (Tr. 35).  Plaintiff testified that the arthritis in her knees and asthma diminishes her ability to work. (Tr. 35, 38). Plaintiff stated that she could only walk two blocks before getting short of breath and that she could only sit for a short time before having to move around. (Tr. 37-38). Plaintiff reported being prescribed Albuterol and Flonase for her asthma. (Tr. 38).

Plaintiff further testified that she has depression and a history of substance abuse in partial remission. (Tr. 31). When questioned about her substance abuse, Plaintiff responded that she had been drug free since 2008. (Tr. 36).  In Plaintiff's disability report, she reported an inability to stay focused or concentrate. (Tr. 161). She also reported having inconsistent mood swings causing her to become unstable and argumentative, which makes it difficult for her to function socially. (Tr. 161).

Plaintiff reported that she is a single mother taking care of her children and granddaughter. (Tr. 156). She also reported that she cooks, cleans, takes care of her own personal hygiene, goes shopping, and does laundry. (Tr. 158-159). She talks on the phone, walks to the park, goes to church, visits family, attends school events of her children, and interacts with people when shopping or going to places such as the post office. (Tr. 159-160). Furthermore,

Plaintiff claims to watch movies and that she plays with her children, manages her own money, and pays bills. (Tr. 156-161).

Plaintiff has previous work experience as a cashier, cleaner/housekeeper, hair stylist and receptionist. (Tr. 36, 40). Plaintiff's job history mostly involved work as a housekeeper which required her to spend most of her workday physically active and on her feet. (Tr. 137-38). Plaintiff spent most of her time walking, standing, bending down, climbing, and carrying large objects while completing her work duties. (Tr. 137-138).  When not serving as a supervisor, her duties included cleaning bed linens, rooms, issuing supplies and duties to workers, examining halls and lobbies for repairs, and taking out trash. (Tr. 137-138, 173).

During her alleged period of disability, Plaintiff received a consultative examination at the request of the State agency from Dr. Michael Bohnert.  In addition, Drs. Robert Lasky and Jan Jacobson reviewed the evidence of record from a psychiatric viewpoint at the request of the State agency. (Tr. 209-213, 214-227, 253-274).  Plaintiff also received behavioral health services from the Boston Medical Center and treatment at Victory Programs, a residential facility for substance abuse, where she successfully completed a treatment program. (Tr. 228, 252). Plaintiff also received treatment from the Roxbury Comprehensive Health Center, Women's Health Department, where she was given care for migraines. (Tr. 200-207).

From April to November 2010, Plaintiff received outpatient mental health treatment at the Boston Medical Center. (Tr. 228-251). Plaintiff was diagnosed with a history of bipolar disorder, post-traumatic stress disorder, substance abuse in remission, and panic disorder without agoraphobia. (Tr. 240-241). Plaintiff was consistently assigned a global assessment of functioning (GAF) score of 60, which manifests moderate difficulty in social or occupation functioning. (Tr. 241). A treatment plan was established for Plaintiff which included medication

3

and individual therapy. (Tr. 242). At her November 22nd appointment, Plaintiff was found to be motivated when compliant with treatment. (Tr. 230). She completed forms regarding housing, and took classes toward her graduate education diploma. (Tr. 230). She was instructed to continue with medication and follow up treatment. (Tr. 230). Likewise, Plaintiff's treatment at Victory Programs proved successful given that Plaintiff completed all of her treatment goals, with additional goals to continue living independently in a safe, sober environment. (Tr. 252).

On August 19, 2010, Dr. Bohnert conducted a disability examination of Plaintiff, where he described her as displaying good recall and having a normal stream of mental activity. (Tr. 211). He also described Plaintiff as coherent and goal directed, reporting that she did not experience hallucinations, delusions, thoughts of suicide, or homicidal ideation. (Tr. 211). Dr. Bohnert administered a diagnostic assessment and determined that Plaintiff had mixed personality disorder with borderline antisocial traits, coupled with probable mood disorder, and a reported history of crack cocaine, alcohol, and marijuana dependency. (Tr. 211). Dr. Bohnert determined that this diagnostic assessment ruled out post-traumatic stress disorder and further opined that Plaintiff's prognosis was more favorable with continued abstinence from use of controlled substances and alcohol, and mental health treatment. (Tr. 212).

On August 24, 2010, Dr. Robert Lasky reviewed the evidence of record at the request of the State agency. (Tr. 214-227). Dr. Lasky found Plaintiff had no severe mental impairment and noted only mild difficulties in her retention of concentration, persistence, and/or pace; furthermore, he found no restrictions in social functioning or activities of daily living. (Tr. 226). He noted Plaintiff appeared to respond well to her psychiatric treatment and her functional abilities were within normal limits. (Tr. 226). Dr. Lasky determined that Plaintiff could

accomplish her activities of daily living within normal limits and was able to socialize effectively. (Tr. 226).

Likewise, on December 9, 2010, Dr. Jan Jacobson reviewed the evidence of record at the request of the State agency. (Tr. 261-274). Dr. Jacobson reported that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in preserving social functioning, and moderate difficulties in sustaining concentration, persistence, or pace without episodes of decompensation. (Tr. 271). She also reported that Plaintiff would be able to understand and remember simple instructions, sustain attention for simple tasks for extended periods of two hour segments in an eight hour day, sustain the basic demands associated with relating adequately to coworkers and supervisors, and respond appropriately to changes in routine work settings. (Tr. 255, 259).

During Plaintiff's hearing, the ALJ posed a hypothetical question to the Vocational Expert (VE). (Tr. 19, 40-41). The VE was asked to compare Plaintiff's residual function capacity with the physical and mental demands of the work she performed in the past. (Tr. 19, 40-41). The VE testified that Plaintiff is capable of performing her past work as a cashier and receptionist as generally performed. (Tr. 19, 41). The VE further testified that because of Plaintiff's breathing impairment there were environmental limitations such as the need for a controlled work environment that is free of dust, fumes, or gases (Tr. 17, 40-41) and that would preclude Plaintiff from performing her past work as a housekeeper/cleaner. (Tr. 19, 41). The ALJ then posed a second hypothetical question, asking the VE whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity. (Tr. 20, 40-42). The VE responded that Plaintiff would be capable of

performing the requirements of representative occupations such as machine operator, merchandise price maker, and ticket seller. (Tr. 20, 41-42).

Based on the record and the testimony of the VE, the ALJ determined that there are a significant number of jobs that exist in the national economy that Plaintiff could perform, in conformance with the Medical-Vocational Guidelines provided at 20 C.F.R. § 404, Subpart P, Appendix 2 and therefore, Plaintiff is not disabled. (Tr. 19-20, 40-42).

## II.    ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity (RFC), which refers to the

claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c). "Once a claimant proves that she can no longer perform her past relevant work, the burden shifts to the ALJ 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).

In the present case, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since April 13, 2010. He further determined that Plaintiff has a combination of severe impairments of asthma, depression, and history of substance abuse, now in reported remission. (Tr. 13). The ALJ found Plaintiff's severe combination of impairments constituted more than a slight abnormality, and could reasonably be expected to cause more than a minimal effect on her ability to perform basic work related activities for a continuous period of twelve months or more. (Tr. 13). However, the ALJ established that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals one of the listed

impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Tr. 13, 74).

The ALJ found that Plaintiff's allegations of asthma do not correspond to a listing-level severity for asthma or any respiratory impairment. There was no objective evidence or medical reports demonstrating that Plaintiff had respiratory impairments that would cause her asthma to be considered severe. (Tr. 13). Similarly, the ALJ determined that Plaintiff's allegations of knee pain does not relate to any objective medical evidence of record, and that her subjective complaints of pain and other limitations alone are insufficient to establish disability as there are not medical signs or laboratory findings that show there is a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged. (Tr. 15, 17). *See* 20 C.F.R. § 416.929(a).

Next, the ALJ found no indication that Plaintiff had any anxiety or depression that causes anything more than a mild restriction in her activities of daily living and that she has no more than moderate difficulty in concentration, persistence or pace given her ability to manage her money, pay bills, and go shopping. (Tr. 14). The ALJ held that even though Plaintiff spent many months in a residential facility program for substance abuse, she successfully completed that program and had no repeated episode or evidence of decompensation due to any mental impairment. (Tr. 14). After considering the evidence of record, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce her reported symptoms; however, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were consistent with a RFC for a reduced range of light work activity. (Tr. 17).

At the concluding steps of the analysis, the ALJ found that Plaintiff is capable of performing past relevant work as a cashier and receptionist. (Tr. 18-19). And, based on the two hypothetical questions posed to the VE, the ALJ determined that, taking into account Plaintiff's age, education, work experience, and RFC, she is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and found Plaintiff not disabled. (Tr. 20, 41-12).

## III.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's

findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## IV.   Discussion

For the reasons discussed below, the court finds that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching that decision.

### A.   The ALJ Did Not Err In Finding that Plaintiff Retains the Residual Functional Capacity to Perform Her Past Relevant Work as a Cashier and Receptionist, as well as Performing Other Work.

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed under 20 C.F.R. § 404, Subpart P, Appendix I (20 C.F.R. §§ 416.920(d), 416.925 and 416. 926). "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).  Medical equivalence will be found when "the medical findings are at least equal in severity and duration to the listed findings," *see* 20 C.F.R. § 416.926(a), and that finding is based upon medical evidence only. That is, "[a]ny medical findings in the evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques." *See* 20 C.F.R. § 416.926(b).

### 1.   Plaintiff's Asthma

Plaintiff testified that her asthma diminishes her ability to work. (Tr. 35, 38). The record indicates that Plaintiff used a nebulizer and took asthma medication daily, but the record is void of any evidence that Plaintiff suffered any asthma attacks that required intensive treatment equal to a hospitalization. (Tr. 13, 200, 281). There is also no indication of any pulmonary function

testing and no reports of any emergency room visits. Taken together, the ALJ did not err in denying this impairment because there was no examining, treating, or reviewing physician showing the existence of this impairment that would meet or medically equal the criteria of any listed impairment.  (Tr. 13). Therefore, substantial evidence supports the ALJ's conclusion that Plaintiff's medical evidence does not document listing-level severity for asthma or any respiratory impairment under Listing 3.03.[2] (Tr. 13).

**2.      Plaintiff's Mental Condition**

Plaintiff further alleges that she is unable to work due to mental impairments such as bipolar disorder, anxiety, depression, and PTSD, and that her mental impairments make it difficult for her to stay focused or concentrate. (Tr. 135, 161, 193, 196). According to the regulations, mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. Part 404, Subpt. P., App. 1, Listings 12.04, 12.06, and 12.09.

In reviewing the evidence, the ALJ was correct in finding that Plaintiff's mental impairments, considered in combination or singly, do not affect her social functioning, daily living, or her ability to work. (Tr. 13-14). In her disability report, Plaintiff reported that she is able to cook, clean, care for her children and personal hygiene, go shopping, and do laundry. This evidences that her claims of anxiety or depression are no more than mild restrictions on her daily living. (Tr. 156-161). Additionally, Plaintiff reports having inconsistent mood swings

---

[2] Although Plaintiff recounted that she was on Albuterol for her treatment of asthma, she never returned for follow-up treatment at Roxbury and there was insufficient evidence to determine that Plaintiff had any physical impairment due to her asthma. (Tr. 16, 205-207). The ALJ correctly noted that even though Plaintiff had been prescribed medication for her asthma, there was no indication of any pulmonary function testing and no reports of any emergency room visits or hospitalization due to asthma. (Tr. 17).

causing her to become unstable and argumentative, therefore, making it difficult for her to function socially. (Tr. 161). Plaintiff talks on the phone, walks to the park, goes to church, visits family, attends the school events of her children, and interacts with people when shopping or going to the post office. (Tr. 156-161). Altogether, it was appropriate for the ALJ to believe that Plaintiff's ability to do these activities supports a finding that she has the mental endurance to take care of herself efficiently and that she is capable of engaging in suitable behavior on a consistent basis. (Tr. 14). As the ALJ correctly noted, there is evidence regarding Plaintiff's concentration, persistence or pace, and that she has no more than moderate difficulties functioning inasmuch as she is able to go shopping, manage her money, handle authority figures well, and play with her children. (Tr. 14, 156-160). The ALJ correctly found that these activities required thought and were spaced out over time, signifying that Plaintiff has no more than moderate difficulty in concentration, persistence, or pace. (Tr. 14).

The ALJ also looked to the treatment records from the Boston Medical Center, which showed that Plaintiff had no more than a moderate mental impairment. (Tr. 228-251). Plaintiff was diagnosed with bipolar disorder, post-traumatic stress disorder, substance abuse in remission, and panic disorder without agoraphobia. (228-251). However, Plaintiff was assigned a GAF score of 60, which indicates only moderate difficulty in social or occupational functioning. (Tr. 230). Plaintiff further showed signs of motivation by complying with treatment and taking classes toward her graduate education diploma. (Tr. 230). In addition, at Victory Programs, Plaintiff displayed positive behavior by completing all her treatment goals with additional goals set to continue living independently in a safe, sober environment. (Tr. 252).

Likewise, the ALJ properly gave significant weight to Dr. Bohnert's opinion when evaluating Plaintiff's mental impairments. (Tr. 18). Dr. Bohnert reported that Plaintiff had good

recall, found no evidence of hallucinations, and was oriented in all spheres. He did not report that Plaintiff had any disabling pain or limitations due to any impairment, mental impairment, or combination of impairments, and his testing showed that Plaintiff was functioning within normal limits. (Tr. 211). Dr. Bohnert opined that Plaintiff's prognosis was more favorable with continued abstinence from alcohol and drugs and mental health treatment. (Tr. 212).

In addition, the ALJ appropriately gave significant weight to the opinion of Dr. Jacobson, who reviewed evidence regarding Plaintiff at the request of the State agency. (Tr. 253-274). Dr. Jacobson reported only moderate difficulties in Plaintiff's social functioning and maintaining concentration, persistence, and/or pace with no episodes of decompensation; mild restrictions in activities of daily living; and moderate difficulties in maintaining social functioning. (Tr. 271). Dr. Jacobson further reported that the evidence did not indicate that Plaintiff had any mental limitations, noting her recent GAF score of 60 with mental status findings within normal limits. (Tr. 273). Dr. Jacobson opined that Plaintiff would be able to understand and remember simple instructions, sustain attention for simple tasks for extended periods of two hour segments in an eight hour day, sustain the basic demands associated with relating adequately to coworkers and supervisors, and respond appropriately to changes in a routine work setting. (Tr. 255, 259).

The court finds no error related to the ALJ's decision that Plaintiff's impairments, individually or in combination, did not meet or medically equal an impairment listed under 20 C.F.R. § 404, Subpart P, Appendix I (20 C.F.R. §§ 416.920(d), 416.925 and 416. 926). The ALJ properly determined that although Plaintiff did spend several months in the Boston Medical Center in a substance abuse program, which she completed successfully, she had no repeated episodes of decompensation due to any mental impairment. (Tr. 14). The ALJ also appropriately

did not find that Plaintiff had been diagnosed with any residual disease process that would cause further decompensation, and she had no history of requiring a highly supportive living environment due to any mental impairment, nor had she presented any inability to function outside of her home. (Tr. 14). Consequently, the ALJ presented substantial evidence supporting his decision that Plaintiff's impairments, individually or in combination, did not meet or medically equal an impairment listed under 20 C.F.R. § 404, Subpart P, Appendix I (20 C.F.R. §§ 416.920(d), 416.925 and 416. 926).

Substantial evidence further supports the ALJ's determination that Plaintiff had the RFC to perform light work activity with a moderate limitation on her ability to concentrate on an occasional basis during an 8-hour workday. (Tr. 19-20).  The ALJ followed the appropriate procedure in determining whether a successful adjustment to other work could be made by considering Plaintiff's RFC and in conjunction with the opinion of the VE. (Tr. 39-44).  In *Holley v. Chater*, 931 F. Supp. 840 (S.D. Fla. 1996), the court held that testimony from a vocational expert is "highly valued and commonly obtained in order to establish the availability of suitable alternative jobs for disability claimants." *Id*. at 851 (citing *Decker v. Harris*, 647 F.2d 291, 298 (2d Cir. 1981)).  Here, the ALJ posed a hypothetical question asking whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC.  (Tr. 40-41). The VE testified that, given all the relevant factors, Plaintiff would be able to perform the requirements of occupations such as machine operator, merchandise price maker, and ticket seller. (Tr. 41-42). The ALJ properly relied on the VE's opinion that, due to Plaintiff's asthma, there were environmental limitations that would preclude her former work as a housekeeper. (Tr. 40-41). However, the ALJ properly concluded that, notwithstanding her asthma, Plaintiff would be able to return to her work as a receptionist and cashier. (Tr. 41). Thus,

14

even if Plaintiff could not return to her past work as a housekeeper, she would be able to perform other work existing in significant numbers in the national economy. (Tr. 20). Thus, substantial evidence supports the ALJ's finding that Plaintiff retains the RFC to perform a reduced range of light work activity by taking into account that Plaintiff was under the care of the Roxbury Comprehensive Community Health Center on July 23, 2009. (Tr. 16, 205-207).

      **3.**        **Plaintiff's Allegations of Disabling Pain**

      The court also finds the ALJ properly assessed Plaintiff's subjective grievances of pain. (Tr. 15-18). According to the regulations, the pain standard applies when a claimant attempts to establish disability using her own testimony of subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* If the ALJ decides to discredit a claimant's subjective testimony, it must state explicit reasons for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). If the ALJ fails to state explicit reasons for discrediting a claimant's subjective complaints of pain, the court must accept the testimony as true. *Id.* When evaluating subjective complaints, the ALJ may even take the claimant's daily activities into account. *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).

      Here, the ALJ appropriately evaluated Plaintiff's subjective complaints and adequately explained his reasoning for holding her testimony as not fully credible. (Tr. 15-18). Plaintiff's daily activities of walking to the park, visiting family, attending her children's school events, and shopping were taken into consideration as contradictory to her statements of pain. (Tr. 159-160). As it pertains to Plaintiff's testimony of knee pain, she testified that she had arthritis in both

knees which diminishes her ability to work, and had pain at a level of 8 out of 10. (Tr. 34-36). However, as the ALJ noted, there is no objective medical evidence confirming the severity of the alleged pain in her knees. (Tr. 17).

Overall, the ALJ made a thorough review of the evidence of record, including Plaintiff's allegations and testimony, the objective medical findings, medical opinions, forms completed at the request of the Social Security Administration, and other relevant evidence, in its finding that Plaintiff was capable of performing past work.

### B.    The ALJ Met His Duty to Develop the Record and Conduct a Fair Hearing

During the hearing, Plaintiff waived her right to representation even after the ALJ explained her rights to representation. (Tr. 29-30).   A claimant has a right to have counsel represent her at the hearing if she desires. *Holland v. Heckler*, 764 F.2d 1558, 1562 (11th Cir. 1985); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). However, a claimant may waive that right, provided the waiver is made knowingly and intelligently.  In order for a waiver to be effective, the claimant must be "properly apprised of h[er] options concerning representation." *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982).

Plaintiff was informed that she could obtain assistance with her claim and that there were organizations that provide free legal services if she met their requirements. (Tr. 50). Plaintiff was also informed that there were attorneys who do not require payment unless she won her appeal, and she was given the opportunity to exercise that right. (Tr. 50).  Indeed, Plaintiff had exercised her rights at certain periods throughout the administrative process by seeking legal representation. (Tr. 70, 118-120). Furthermore, Plaintiff was given the opportunity to delay the hearing so as to permit her to attain other legal representation; however, she knowingly decided to move forward with the hearing without representation. (Tr. 29). As a result, the ALJ satisfied

his obligation to make Plaintiff aware of her rights to be represented by an attorney, and also ensured that Plaintiff knowingly and voluntarily waived her rights. (Tr. 29-30).

Of course, notwithstanding any issue of representation, an ALJ has an affirmative duty to develop a fair, full record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). In a *pro se* proceeding, such as in this case, that duty is particularly heightened. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). In *Cowart*, the court held that the ALJ in *pro se* Social Security cases has the duty to:

> scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, be especially diligent in insuring that favorable [as well as unfavorable] facts are elicited, state specifically the weight accorded to each item of evidence and why he reached that decision, articulate specific jobs that the claimant is able to perform which have been shown by substantial evidence and not mere intuition or conjecture of the Administrative Law Judge, perhaps even produce a vocational expert to testify as to this matter, sufficiently question such vocational expert, elicit testimony and make findings regarding the effect of prescribed medications on the claimant's ability to work, and to afford an opportunity to the claimant to subpoena and cross-examine the medical experts who examined her and made reports thereon.

*Id.* at 735-737 (internal quotations omitted).

Here, the ALJ met this burden. The ALJ followed proper procedure by looking to Plaintiff's treatment records, the State agencies' psychological assessment, and other psychiatric evaluations. (Tr. 200-274). In pertinent part any case where there is evidence which indicates the existence of a "mental impairment" the Commissioner may determine that the claimant is not under a disability only if he has made "every reasonable effort" to obtain the opinion of "a qualified psychiatrist or psychologist." *McCall v. Bowen*, 846 F.2d 1317, 1320 (11th Cir. 1988) (quoting 42 U.S.C. § 421(h)). As stated above, the ALJ met this burden by reviewing the opinions of the consultative examiners of Plaintiff's mental health throughout his decision (Tr.

16-18, 200-274), and fully developing the record by having the medical evidence reviewed by psychologists or psychiatrists as required. (Tr. 214-227, 253-274).

Plaintiff was questioned during the hearing about her alleged ailments and how they affected her ability to function, her everyday activities, and her medications and current treatment. (Tr. 31-39). The ALJ elicited the testimony of the vocational expert, when evaluating Plaintiff's ability to perform past work and other work. (Tr. 39-44). The ALJ properly posed hypothetical questions when eliciting the VE's testimony and allowed Plaintiff the opportunity to make objections during the testimony of the VE. (Tr. 39-44). Additionally, a consultative physical test of Plaintiff was set up, but she failed to show up for the appointment. (Tr. 29-30). *See* 20 C.F.R. § 416.918 ("If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind."). The record shows substantial evidence that allowed the ALJ to make an RFC assessment, and there was substantial evidence confirming his judgment. *See* 20 C.F.R. § 416.929.

### C.   Plaintiff's Offer of New Evidence for the Court's Consideration in Deciding Whether to Remand

On May 7, 2014, Plaintiff filed additional evidentiary material:  treating notes from the UAB Mental Health Center for the period between March 8, 2012 and June 4, 2012; treating notes from the Boston Medical Center showing evidence of the osteoarthritis in her knee; evidence pertaining to her back ailments; and new evidence concerning her asthma treatment. (Tr. 275-317, Doc. 11).). In view of Plaintiff's *pro se* status, the court construes Plaintiff's submission as a motion to supplement the record, or alternatively, a motion for a "sentence six" remand.

1.      **Plaintiff's Additional Evidence**

The additional evidence Plaintiff filed consists of medical records listing her medications for asthma prescribed at the Jernigan Healthcare facility, and records of mental health treatment at the University of Alabama-Birmingham (UAB) Mental Health Center and the Boston Medical Center. (Tr. 275-317). The list of Plaintiff's medications for her asthma prescribed at the Jernigan Healthcare facility is considered new evidence because this evidence is relatively close to the time of the ALJ's decision.  Additionally, the mental health treatment Plaintiff received at the UAB Mental Health Center occurred four months after the ALJ denied her application for SSI.  This evidence is unquestionably "new" and Plaintiff had good cause for failing to submit it during the administrative proceedings. (Tr. 283-291). Nevertheless, Plaintiff has not shown that the new evidence is material.

The new medical evidence demonstrates that Plaintiff was treated at UAB's Mental Health Center on March 8, 2012.  (Tr. 284-291). The results established that Plaintiff received a near perfect total score of 29 out of 30 when given the Folstein Mental Status Exam. (Tr. 290). Plaintiff was also described as being "alert" when assessing her level of consciousness on a continuum. (Tr. 290). The UAB Mental Health Center ruled out Bipolar Disorder and Major Depression Disorder. However, the facility did diagnose Plaintiff with Post Traumatic Stress Disorder. (Tr. 314).

On June 4, 2012, Plaintiff again received treatment and a mental status exam at the UAB Mental Health Center. (Tr. 288). The mental status exam established that Plaintiff's appearance was clean, her demeanor engagable, her speech and motor skills normal, her thought process was goal directed, and she had no disturbance of thought content. (Tr. 288). Plaintiff had no suicidal or homicidal intent or delusions and showed no signs of visual hallucinations. (Tr. 288). In turn,

Plaintiff's treatment at UAB's Mental Health Center demonstrated that her mental health progressed to a point of stability. (Tr. 284-291).  However, the court notes that the exam notes indicate that Plaintiff's judgment and insight were impaired. (Tr. 288).

The court does not minimize the circumstances that led Plaintiff to seek treatment for her mental impairments. However, the issue here is whether or not there is a reasonable possibility that the records at issue would change the outcome of the ALJ's decision—*i.e.*, whether this new evidence could reasonably result in a finding that Plaintiff is disabled. The fact that Plaintiff's treatment at the UAB Mental Health Center does not indicate any profound effect on her mental health leads the court to believe that she was not disabled within the meaning of the applicable law during the relevant period. (Tr. 284-291). Furthermore, Plaintiff has not been diagnosed with any residual disease that would cause decompensation.

As the evidence pertains to Plaintiff's osteoarthritis in her knees, this evidence is considered "new" given that Plaintiff was treated for this ailment around August 1, 2013, which is subsequent to the ALJ's decision and the Appeals Council's denial. (Doc. 11). Thus, there is good cause for failure to incorporate that evidence into the record in the prior proceeding. After careful review, the court concludes that this new evidence is not material and does not warrant a remand.  In *Lewis v. Comm'r of Soc. Sec.*, 487 Fed. Appx. 481 (11th Cir. 2012), the court held that in order for a person alleging to have arthritis to establish a musco-skeletal system impairment, she must have the "inability to ambulate effectively on a sustained basis." *Id*. at 484. In Plaintiff's encounter report relating to her knee pain, it was reported that she was able to ambulate without assistance and able to move from the exam room chair to the medical table without assistance. (Doc. 11).

20

Also, Plaintiff's additional medical evidence shows that she was treated at the American Health Imaging Facility by Dr. Joel Mixon. (Doc. 11). An MRI done by Dr. Mixon established that Plaintiff suffers minimally from knee pain, had a focal, grade 3 chondral lesion of the right knee, and suffers from minimal chondral thinning of the medial femorotibial compartment with very slight medical meniscal extrusions. (Doc. 11). There was also no full thickness osteochondral lesion of the medial compartment. (Doc. 11). As a result of these findings, Plaintiff was given medication and underwent six weeks of physical therapy, two days per week. (Doc. 11). It is not reasonable to believe that this evidence would alter the administrative outcome of Plaintiff's case because around the time Plaintiff was being treated for her knee pain, she had started working again and during treatment, she denied having any trauma in her knees, swelling, redness, or knee pain causing her to fall. (Doc. 11). Consequently, this new evidence pertaining to Plaintiff's osteoarthritis in her right knee is immaterial and has no reasonable possibility of changing the ALJ's conclusion. (Doc.11).

The evidence relating to Plaintiff's allegations of lower back pain is considered "new" due to the treatment of Plaintiff's lower back occurring on August 1, 2013, which is months after the ALJ's decision and Appeals Council's denial. (Doc. 11). Dr. Joel Mixon opined that Plaintiff's lumber alignment is normal, and no compression fracture was seen on an MRI. (Doc. 11). Plaintiff's lower thoracic cord and conus medullaris showed no abnormalities and her abdominal and pelvic structures were not abnormal. (Doc. 11). Dr. Mixon reported that Plaintiff had only a minor central disc bulge, broad-based left foraminal disc protrusion, and associated annular tear. (Doc. 11). There was also a narrowing of the left neural foramen with exiting neural encroachment. (Doc. 11). As a result of Dr. Mixon's findings, Plaintiff was given medication and underwent physical therapy for four weeks, twice per week. (Doc. 11). Given that Dr. Mixon

concluded that Plaintiff's back ailments were generally minor, there is no reason to believe that this evidence would alter the administrative outcome of Plaintiff's case and is therefore, immaterial and considered a slight abnormality.

The evidence pertaining to Plaintiff's allegations of carpal tunnel syndrome, is also considered new evidence because this treatment was received on November 13, 2013, which is months after the ALJ's decision and the Appeals Council's denial. (Doc. 11). However, this evidence is simply not material due to the lack of any major evidence showing that Plaintiff is disabled. There is evidence of only one hospital visit to UAB Medicine where Plaintiff complained of carpal tunnel syndrome and was simply given a splint to wear nightly. (Doc. 11). This evidence leads the court to believe that Plaintiff was not disabled, within the meaning of the applicable law, during the relevant period. That is, the record does not contain sufficient evidence to support a finding that Plaintiff's carpal tunnel syndrome is more than a "slight abnormality" and, therefore, it is not considered material evidence relevant and probative to cause a reasonable probability that it would change the ALJ's results.

As for Plaintiff's list of medications and treatments pertaining to her asthma, the court's examination of this evidence finds that it would not change the administrative outcome of the ALJ's decision nor would this new evidence reasonably result in a finding that Plaintiff is disabled. (Tr. 275-282, Doc. 11). This new evidence does not document listing-level severity for asthma or any respiratory impairment. (Tr. 275-282, Doc. 11). There was no examining, treating, or reviewing physician who shows that the existence of this impairment would meet or medically equal the severity of an impairment listed under 20 C.F.R. § 404, Subpart P, Appendix I (20 C.F.R. §§ 416.920(d), 416.925 and 416. 926). Furthermore, even though the new evidence shows that Plaintiff had been prescribed medication for asthma, there is no sign of any pulmonary

function testing. (Tr. 275-282, Doc. 11). Although Plaintiff did make visits to the hospital in relation to her asthma, it was mainly due to her prescription running out and her symptoms being considered moderate.  (Tr. 275-282. Doc. 11). Therefore, upon careful consideration of this new evidence, the court finds it does not present grounds for remand under sentence six of 42 U.S.C. § 405(g), because it is not material to the issue of whether Plaintiff was disabled between her alleged onset date and the date of the ALJ's decision. (Doc. 11, 275-282).

> 2. **Sentence Six Remand**

To obtain a sentence six remand, Plaintiff "must show the evidence is new and material and was not incorporated into the administrative record for good cause. New evidence is material, and thus warrants a remand, if 'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Timmons v. Commissioner of Social Security*, —— Fed. Appx. ——, 2013 WL 3388234, *5 (Jul. 9, 2013); *see* 42 U.S.C. § 405(g) (providing, in sentence six, that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding").  For substantially similar reasons as noted above, Plaintiff is not entitled to such a remand.  To the extent the evidence is new, it is not material; and, to the extent it is arguably material, it is not new.

## V.   Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 8, 2014.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE